IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHWESTERN DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| **Donna LUNDAY** | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. _____ |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| **Dirk KEMPTHORNE**, Secretary, United States | ) | |
| Department of Interior, or his predecessor-in-office; | ) | |
| United States Department of Interior; | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

COMES NOW Donna Lunday, by and through her attorney, Bernice C. Delorme, and hereby submits this Complaint alleging retaliation by her immediate supervisor, who is a Bureau of Indian Affairs employee and the Principal of Turtle Mountain Elementary School, for filing an EEO claim against him; for discrimination based upon gender; and for sexual harassment, including the creation of a hostile work environment.

## II.    PROCEDURAL HISTORY

Ms. Donna Lunday initially contacted an EEO counselor on January 28, 2005. On January 31, 2005, she filed a formal complaint. On May 10, 2005 the agency notified Ms. Lunday that 10 of her claims had been accepted for investigation and processing. The investigation was conducted from July 14, 2005, to September 1, 2005, and the Report of Investigation (ROI) was submitted to the agency on September 14, 2005. On July 6, 2006, Ms. Lunday filed an appeal from the agency's final order concerning her EEO Complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.* A Decision was

issued on August 13, 2007 affirming the agency's final order finding no discrimination or discriminatory harassment.  Ms Lunday has now elected to file a timely civil suit in the United States District Court for the Northwestern District of North Dakota against the Agency.

### III.    FACTS

Ms. Lunday adopts as part of her background facts the following incidents she identified in her EEO Report of Investigation (ROI):

1.      Ms. Lunday was forced by Mr. David Gourneau, her immediate supervisor, to work on six occasions without compensation while on furlough between June and July, 2004 (June 1, 14, 25, July 7, 19, 21, 22).

2.      Mr. Gourneau verbally, physically and emotionally harassed Ms. Lunday by pointing his finger within striking distance of her face in an intimidating manner, yelling at her for little or no good reason, demeaning her both alone and in the presence of her departmental staff, slamming doors in an apparent show of physical force, and blaming Ms. Lunday for Mr. Gourneau's poor decisions and unwarranted matters.

3.      On December 3, 2004, Ms. Lunday left work to deal with a family emergency without getting her leave request signed by her supervisor, Mr. Gourneau, because he could not be located.  On December 4, 2004 (the next day), Mr. Gourneau came into Ms. Lunday's office again slamming the door shut in an intimidating manner, again pointing his finger within striking distance of her face.  Mr. Gourneau then yelled at Ms. Lunday, telling her never to leave work again without a signed leave request.

4.      On December 7, 2004, Mr. Gourneau blamed Ms. Lunday for serving sack lunch meals on December 6-7,2004, when the week before, Mr. Gourneau had pre-

approved those same sack lunch meals.

5. On December 10, 2004, Mr. Gourneau said he wanted homemade soup for the school luncheon menu. When Ms. Lunday explained to him that five people were out sick, including three cooks, Mr. Gourneau directed Ms. Lunday to cook his soup. When she explained that her supervisory duties did not allow time for her to cook, he insisted by saying "You need to cook". Mr. Gourneau requested that Ms. Lunday change the whole school menu to Mr. Gourneau's liking regardless of the fact that Ms. Lunday had already posted the regular menu on the internet for teacher and student reference.

6. On December 16, 2004, Mr. Gourneau called Ms. Lunday into his office, behind closed doors at his request. Mr. Gourneau then proceeded to confront Ms. Lunday with idle gossip that was totally unrelated to Ms. Lunday's job duties. Mr. Gourneau explained that Ms. Lunday's father worked with his brother, and that his brother told him Ms. Lunday's father had said that Dave Gourneau doesn't know anything about nutrition. He went on to say that Ms. Lunday's father had no business saying stuff like that about him. He became more agitated as he spoke, and ended the closed door session saying in effect "If your dad has anything to say, you tell him to come and say it to my face." Mr. Gourneau even restated the phrase "You tell him to come and say it to my face" a second time for emphasis. These comments left Ms. Lunday feeling personally threatened and that her employment was also threatened.

7. On December 17, 2004, Mr. Gourneau directed Ms. Lunday to read a work-related book over her Christmas vacation, without any promise of compensation for the time spent on this activity. Mr. Gourneau made the request in front of several men, who chuckled at the statement. Mr. Gourneau regularly "hung out", ate breakfast and otherwise fraternized with these male school bus drivers, but did not do so with the all

female Food Service department staff.

8.    On January 6, 2005, Mr. Gourneau again attempted to force Ms. Lunday to cook, even though he already knew that her other job responsibilities did not allow her to have the time to cook.  He called her into his office, had her job description sitting on his desk, and told her she'd have to cook.  She explained that her time did not allow for cooking.  His response was "You're gonna start cooking."  When she said she could not do her job and cook as well, he said "You'll do it."  When she said "I can't", he said "I'll expect your resignation by the time you leave work today.  Ms. Lunday then got up and walked out of Mr. Gourneau's office.  At that point he hollered "Get back here, Donna. Get back here."  The hollering was so loud she could hear him while walking across the road to see Rosie Davis, Mr. Gourneau's direct supervisor, to report the incident.  By the time Ms. Lunday reached Rosie Davis' office, she was crying from the stress of the encounter.  She felt as if Mr. Gourneau was trying to make the conditions of her job so intolerable that she would have no choice but to quit.

9.    On January 7, 2005, Mr. Gourneau again called Ms. Lunday into his office.  Once alone with her, he accused her of having an outburst the previous day (January 6, 2005).  She explained to him that she was afraid of him. In fear, Ms. Lunday asked for an outside person to be present in the meeting with Mr. Gourneau and to take notes of the discussion.  Mr. Gourneau said "No, sit down."  She insisted that she wanted someone else in the room, and Mr. Gourneau continued to demand her to "Sit down." Finally, at Ms. Lunday's third request, Mr. Gourneau called Donna Parisien, Mr. Gourneau's Business Manager to come into his office.  He told Ms. Lunday that Ms. Parisien was documenting what was said in the meeting.  Ms. Lunday said "Ok."

10.    Ms. Lunday listened to Mr. Gourneau reciting his complaints that he's

telling her to cook and she is refusing to cook, and that he's given her a directive.  He said her asked her to resign because she told him she was going to resign.  Ms. Parisien is writing down this information.  When Ms. Lunday began to speak, she again told Mr. Gourneau that she didn't feel secure in her job, that Mr. Gourneau had been harassing her, and that she's afraid of him.  She reiterated Mr. Gourneau's statement that if her father had anything to say that she should tell him to come and say it to his [Mr. Gourneau's] face.  At that point, Mr. Gourneau said "Don't write that down" to Ms. Parisien.  Ms. Lunday said "Donna, you have to write that down."  Mr. Gourneau then insisted a second time, saying "Don't write that down" yet again.  Ms. Lunday also stated a second time "Donna, you have to write that down."  Ms. Parisien simply sat there wondering what to do.  Ms. Lunday again requested "Donna, please could you write it down?"  Donna then began writing something, but Ms. Lunday was not sure what.

After this encounter, Mr. Gourneau sat and stared at Ms. Lunday.  She could see that he was upset.  His face was red, and Ms. Lunday was afraid, but Donna was sitting between her and Mr. Gourneau.  Ms. Lunday then requested a copy of Ms. Parisien's notes of the meeting.  When Ms. Lunday returned to pick up the notes the next morning, Ms. Parisien said effectively "Oh, I gave them to Mr. Gourneau."  Ms. Lunday then put her request for the notes in writing, but she has never gotten the notes.

Ms Lunday filed an informal grievance alleging that Dave Gourneau has been intimidating and harassing her daily and treating her unprofessionally.  She requested and received an alternate supervisor effective February 1, 2005.  She filed EEO complaints alleging gender discrimination on January 28, 2005, a second complaint on May 26, 2005, and a third complaint on July 12, 2005 alleging sex discrimination and reprisal.

From January 31, 2005 through May 16, 2005, Ms. Lunday documented a total of

12 incidents of harassment involving her and Mr. Gourneau. (See attached EEO complaint dated May 26, 2005 detailing these incidents). From July 5, 2005 through August 25, 2005, Ms. Lunday documented an additional 8 incidents of harassment.

On September 10, 2005 Ms. Lunday was subsequently dismissed from her position as part of a RIF action by the Agency. She received a RIF notice on July 12, 2005, and filed an informal administrative grievance on July 18, 2005. She was told by Mr. Gourneau that the RIF was due to budget shortages, and that the RIF had been *concurred* with by the School Board and Line Office. However, the School board did not approve the RIF. In fact, the request for a RIF was appealed to the Director of the Office of Indian Education Programs, who approved the RIF appeal request on June 14, 2005 "based on lack of funds." (See August 10, 2005 letter to Donna M. Lunday, second page, fifth paragraph). Ms. Lunday then procured a copy of the agency budget. It showed that the employees subject to the RIF were in her department and were female. It also showed that Mr. Gourneau had taken the money saved by the RIF action and used it to hire 6 male bus drivers. They were hired at a higher rate of pay (level (02) instead of level (01)) than was paid to the Food Service employees who were terminated. Thus, Ms. Lunday was able to show that the explanation for the RIF action (i.e. budget shortages) was a pretext, as 6 male bus drivers were hired after the RIF at rates of pay higher than that paid to the female Food Service workers who were terminated. After over 18 years of service to the Department of the Interior Bureau of Indian Affairs, Donna Lunday was removed from her position as Education Specialist/ Nutritionist through an unnecessary Reduction in Force (RIF) that targeted her department, the Food Service Department. Her department was the only department whose employees were all women.

## IV.    ARGUMENT

### A.    Sexual Harassment/Hostile Work Environment Claim

The elements of proving sexual harassment was set out in the August 13, 2007

appellate Decision in Ms. Lunday's case as follows:

> Harassment of an employee that would not occur but for
> the employee's race, color, sex, national origin, age,
> disability, or religion is unlawful. *McKinney v. Dole,* 765
> F.2d 1129, 1138-1139 (D.C. Cir. 1985). The
> Commission's *Enforcement Guidance: Vicarious
> Employer Liability for Unlawful Harassment by
> Supervisors,* EEOC Notice No. 915.002 (June 18, 1999),
> identifies two types of discriminatory harassment: (1)
> harassment that results in a tangible employment action;
> and (2) harassment that has the purpose or effect of
> unreasonably interfering with complainant's work
> performance or creating a hostile work environment. In
> this case, we find that, with the exception of allegation (1)
> concerning being forced to work without compensation, all
> the other incidents of alleged harassment did not result in a
> tangible employment action, but rather constitute a sex-
> based hostile work environment claim. In assessing
> whether complainant has set forth an actionable claim of
> hostile work environment, the conduct at issue must be
> viewed in the context of offensive encounters, the severity
> of harm, and the span of time over which the encounters
> occurred. *Lopez v. United States Postal Service*, EEOC
> Appeal No. 01A20935 (September 15, 2003), *request for
> reconsideration denied*, EEOC Request No. 05A40107
> (November 17, 2003).

The above-referenced facts related to the pretext of Reduction In Force were not included

in Ms. Lunday's earlier EEOC claim or appeal, so these facts constitute newly discovered

evidence on behalf of Ms. Lunday.

In this case, Ms. Lunday asserts that Mr. Gourneau's actions began as harassment

and resulted in a hostile work environment. A look at the totality of the circumstances

detailed in Ms. Lunday's Report of Investigation (ROI) from her EEOC case and those

contained in the documents attached hereto shows that the nature of her encounters with Mr. Gourneau was so he could intimidate her and to cause her to begin to question her own competency, even to the point of considering a voluntary resignation. Mr. Gourneau's behavior toward Ms. Lunday can be likened to that of abusers in domestic violence situations who exhibit radically different behavior in public than they do behind the closed doors of their homes and bedrooms. This change in behavior has been labeled "Public Face, Private Face" in the domestic violence and other fields of study. *Omote & Ura: Public Face and Private Face by Thomas A. Stanley and R.T.A. Irving*

Ms. Lunday is also able to show that the harassment she suffered at the hands of Mr. Gourneau resulted in tangible employment action as well - that of dismissing her from her nine-year tenure as an Education Specialist/Nutritionist and from an 18-year career with the Bureau of Indian Affairs through a RIF which Ms. Lunday has proven to be a pretext for sexual harassment. As detailed in the Facts above, Ms. Lunday is able to show that the explanation for the RIF action (i.e. budget shortages) was a pretext, as 6 male bus drivers were hired after the RIF at rates of pay higher than that paid to the female Food Service workers who were terminated. Ms. Lunday also asserts that she has been discriminated against based on her female gender.

### B.    Gender Discrimination Claim

It has been held by the Supreme Court that under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e et seq., to establish a *prima facie* case of disparate impact sex discrimination, a plaintiff need only show that an employer's facially neutral standards operate in a significantly discriminatory pattern. *Dothard v. Rawlinson*, 433 U.S. 321, 97 S. Ct. 2720, 53 L. Ed. 2d 786, 15 Fair Empl. Prac. Cas. (BNA) 10, 14

Empl. Prac. Dec. (CCH) ¶7632 (1977). In so holding, the Court in *Dothard* relied on its previous holdings in *Griggs v. Duke Power Co*., 401 U.S. 424, 91 S. Ct. 849, 28 L. Ed. 2d 158, 3 Fair Empl. Prac. Cas. (BNA) 175, 3 Empl. Prac. Dec. (CCH) ¶8137, 88 Pub. Util. Rep. 3d (PUR) 90 (1971), which dealt with similar allegations that facially neutral employment standards disproportionately excluded African Americans from employment. Further, it is permissible for the trier of fact in employment discrimination case to infer the ultimate fact of discrimination from the falsity of the employer's explanation; proof that defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. Age Discrimination in Employment Act of 1967, § 4(a)(1), 29 U.S.C.A. § 623(a)(1); Civil Rights Act of 1964, § 703(a)(1), 42 U.S.C.A. § 2000e-2(a) (1). *Reeves v. Sanderson Plumbing Products, Inc.,* 120 S. Ct. 2097, 147 L. Ed. 2d 105 (U.S. 2000); West's Key Number Digest, Civil Rights 377.1.

The Supreme Court has held that once it is shown that facially neutral employment standards are discriminatory in effect on the basis of sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e et seq., an employer must meet the burden of showing that its standards have a manifest relation to the employment. *Dothard v. Rawlinson*, 433 U.S. 321, 97 S. Ct. 2720, 53 L. Ed. 2d 786, 15 Fair Empl. Prac. Cas. (BNA) 10, 14 Empl. Prac. Dec. (CCH) ¶7632 (1977).

In the instant case, the facially neutral explanation proferred by Mr. Gourneau and the Business Manager for the RIF in the Food Service Department was the RIF was required because of budget cuts, AND that this RIF was concurred by the School Board. (See attached Minutes of May 16, 2005 Public Law 95-561 School Board Regular

Meeting).  Under the Agenda item "Reorganization/Food Service", the Minutes state:

> Dave [Gourneau] presented the Organizational Chart and is requesting to abolish the Education Specialist/ Nutritionist and five (5) part-time positions under Food Service and advertise for a School Cook.  The Business Manager said we need to take a look at the budget because we cannot afford to pay the salaries.  After discussion, Viola motioned to approve the Organizational Chart as presented.  *After third call motion died due to the lack of a second.*  No further business.  (Emphasis added).

As the court will note, the School Board Minutes do not show the concurrence proferred by Mr. Gourneau.  For the above stated reasons, Ms. Lunday requests that this court infer the ultimate fact of discrimination from the falsity of the Mr. Gourneau's pretextual explanation, and make a finding of gender discrimination in this case.

### C.       Retaliation For Filing Previous EEO Claims

Ms. Lunday asserts that she was retaliated against because of her prior EEO activity when she was RIFFED on the pretext of agency budget cuts.  Federal law prohibits retaliation against an individual for opposing any practice made unlawful by Title VII of the Civil Rights Act (Title VII) (42 USC 2000e et seq.), the Age Discrimination in Employment Act (ADEA) (29USC 621 et seq.), the Equal Pay Act (29 USC 206d) or the Rehabilitation Act (29 USC 791 et seq.); or for participating in any stage of administrative or judicial proceedings under those statutes.  *29 C.F.R. § 1614.101(b).*  Protected activity consists of the following:

1.       opposing a practice made unlawful by one of the employment discrimination statutes (the "opposition" clause); or

2.       filing a charge, testifying, assisting, or participating in any manner in an investigation, proceeding, or

> hearing under the applicable statute (the
> "participation" clause).

*29 C.F.R. § 1614.101(b).*

In retaliation cases, the complainant has to persuade the judge that the Agency intentionally retaliated against the Complainant. *See Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867 (1984). The analysis for retaliation cases is set forth in *Burlington Northern and Santa Fe Ry. Co. v. White*, --U.S.--, 126 S.Ct. 2405 (2006); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981); and *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

The Supreme Court has established a three pronged approach to clarify the allocations of burdens and the order of presentation of proof in retaliation cases. The first prong requires the Complainant to present enough evidence from which it can be inferred that retaliation occurred, and was based upon Complainant's prior EEO activity. This establishes the *prima facie* case.

To establish a *prima facie* case of retaliation, a Complainant must show the following:

1. she engaged in the protected activity;
2. the Agency was aware of the protected activity;
3. she was subsequently subjected to a materially averse action; and
4. absent other evidence tending to establish retaliatory motivation, the adverse action followed the protecte3d activity within such a short period of time that retaliatory motivation can be inferred.

*Burlington Northern and Santa Fe Ry. Co. v. White*, --U.S.--, 126 S.Ct. 2405 (2006); *Cook v. United States Postal Service,* EEOC Appeal No. 01964367 (April 30, 1999); *Hochstadt v. Worcester Foundation for Experimental Biology, Inc.,* 425 F.Supp. 318 (D. Mass. 1976), aff'd 545 F.2d 222 (1st Cir. 1976) (applying *McDonnell Douglas* to

retaliation cases).

After establishment of the *prima facie* case, the Agency is given the opportunity to articulate legitimate non-retaliatory reasons for its actions. The Agency need only show that its reasons are based on legitimate considerations rather than illegitimate, retaliatory ones. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

Finally, the Complainant must present evidence which establishes that the reasons stated by the Agency are in actuality a pretext to mask unlawful retaliation. See, *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). The Supreme Court has ruled that rejection of the Agency's proffered reason does not compel judgment for the Complainant, but rather merely permits the trier of fact to infer the ultimate fact of retaliation. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993); *Dothard v. Rawlinson*, 433 U.S. 321, 97 S. Ct. 2720, 53 L. Ed. 2d 786, 15 Fair Empl. Prac. Cas. (BNA) 10, 14 Empl. Prac. Dec. (CCH) ¶7632 (1977). *Reeves v. Sanderson Plumbing Products, Inc.,* 120 S. Ct. 2097, 147 L. Ed. 2d 105 (U.S. 2000).

In this case, Ms. Lunday alleges that she was retaliated against because of her prior EEO activity when she was RIFFED from her Education Specialist/Nutritionist position because of budget cuts that were not necessary and were never made.

Before the RIF was announced, Ms. Lunday had two EEO complaints alleging discrimination based upon gender, and one complaint alleging retaliation pending against Mr. Gourneau, thus meeting the first prong requirement of engaging in EEO activity.

Next, the Agency was aware of her activity, as they had assisted her in the proper filing of her complaints. (See attached letters dated August 10 and August 17, 2005

regarding Ms. Lunday's Complaint of Discrimination dated July 26, 205 alleging reprisal

for previous EEO activity of 1/31/05; Complaint of Discrimination dated May 28, 2005

alleging reprisal for previous EEO activity of 1/10/05; and letter to Ms. Lunday from

Dept. of the Interior Office of the secretary referencing her "…complaint of

discrimination filed August 1, 2005…"  These documents show that the Agency was

aware of Ms. Lunday's previous EEO activity, thereby meeting the second *Burlington*

*Northern* prong required to establish a *prima facie* case.

The third *Burlington Northern* prong requires that Ms. Lunday be subsequently

subjected to a materially adverse action.  In the case at bar, Ms. Lunday was separated

from a positon which she had held for over nine years, and form federal employment

which she had held for over 18 years after she had engaged in prior EEO activity.  (See

attached Memorandum to Donna M. Lunday dated July 8, 2005 regarding "Specific

Notice of Reduction-in-Force (RIF) - Separation.  Because of these events, Ms. Lunday

meets the third *Burlington Northern* prong for establishing a *prima facie* case.

The fourth *Burlington Northern* prong requires that absent other evidence tending

to establish retaliatory motivation by the Agency, a nexus may be shown by evidence that

the adverse treatment followed the protected activity within such a period of time and in

such a manner that a reprisal motive is inferred.  *Siemens v. Department of Justice*,

EEOCF Request No. 05950113, 1196 WL 159206 (March 28, 1996) (citations omitted).

"Generally the Commission has held that nexus may be established if events occurred

within one year of each other."  *Patton v. Department of the Navy*, EEOC Request No.

05950124, 1996 WL 375816 (June 27, 1996).  In this instance, the adverse employment

action (i.e., Ms. Lunday's RIF separation) occurred less than two months from the filing

of her most recent discrimination complaint.  Ms. Lunday therefore meets the fourth

*Burlington Northern* prong for establishing a *prima facie* case of retaliation.

Once the Complainant has established a prima facie case, the Agency has the burden of articulating a legitimate non-retaliatory reason for its conduct.  In this instance the Agency alleges that it RIFFED Ms. Lunday's position due to budget cuts.  However, the attached letter dated August 17, 2005 regarding Ms. Lunday's Formal Grievance, along with the included outgoing bills and incoming receipts from state reimbursements shows that indeed the Food Service Department budget had a surplus of funds at the time the Agency claims to have needed to cut this budget.  However, an employer's failure to follow its own policies may support a finding of discrimination.  *Floyd v. State of Missouri Dept. of Social Services, Div. of Family Services*, 188 F.3d 932, 937 (8th Cir. 1999).

In this case, Mr. Gourneau asserted that the School Board had concurred with the RIF when in fact it had not.  Mr. Gourneau also appealed the school Board's lack of action in his attempt to legitimate the unnecessary RIF.  In addition, Ms. Lunday's evaluation for August, 2003 - May, 2004 shows that Ms. Lunday scored very high in the performance indicators upon which she was scored.  For these reasons, Ms. Lunday asserts that the BIA has not articulated a legitimate non-retaliatory reason for its conduct.  The BIA also did not follow its own policies by allowing an unnecessary RIF to take place at Turtle Mountain Elementary.

## V.     PRAYER FOR RELIEF

Ms. Lunday prays for the court to reinstate her to her position as Education Specialist/Nutritionist at pay level (05) for Education Specialists, for monetary compensation for her medical bills due to stress, pain and suffering; for back pay from

the time of the Reduction in Force to the present; for attorneys fees and costs, and for

such other relief as this court may deem just and equitable in this matter.

Respectfully Submitted this 9th day of November, 2007.


_____

Bernice C. Delorme, Attorney at Law
TMID #0750-AT
ND Bar # 06203
WA Bar # 31148
NM Bar # 1241
Counsel for Plaintiff Donna Lunday